**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 08-01715-JW |
| Bobby Lee Connelly and Mebane Louise Connelly, | Chapter 13 |
| | ORDER |
| Debtor(s). | |

FILED
at ___O'clock & ___min ___M
JUN 2 5 2008
United States Bankruptcy Court
Columbia, South Carolina (25)

ENTERED
JUN 2 5 2008
SRP

This matter comes before the Court on Objection to Confirmation of Plan ("Objection") filed by Atlantic Community Bank ("Atlantic"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1. Within 910 days of the petition, Atlantic loaned money to enable Debtors to acquire their vehicle. The loan was memorialized by a promissory note and security agreement dated August 1, 2006 (the "Old Note").

2. In exchange for the loan, Atlantic acquired a purchase money security interest in Debtors' vehicle perfected by a lien noted on the vehicle's certificate of title on or about August 1, 2006.

3. In October of 2007, Debtors sought to modify the terms of the Old Note to change the payment date. To effectuate the change, Debtors signed a new promissory note and security agreement with Atlantic on October 24, 2007 (the "New Note"). According to the express

---

[1] To the extent any of the Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law constitute Findings of Fact, they are so adopted.

written terms of the New Note, Debtors refinanced antecedent debt, represented by the Old Note, by paying off loan # 301800223.

4.      The New Note changed material terms of the Old Note, including the loan and payment amount, the date for payment, the amount of any late fee, and the annual percentage rate of interest. Certain non-material terms of the Old Note, such as the loan number and the maturity month for the loan, remained the same under the New Note.

5.      Debtors did not receive cash from or consolidate other debts under the New Note; however, the New Note also did not enable Debtors to acquire rights in the vehicle as the vehicle had previously been titled in their names more than a year earlier.

6.      Debtors filed for relief under chapter 13 of the Bankruptcy Code on March 25, 2008. Debtors' proposed chapter 13 plan seeks to value Atlantic's claim secured by their vehicle pursuant to 11 U.S.C. § 506.

7.      Atlantic contends that the hanging paragraph of 11 U.S.C. § 1325(a) prohibits the valuation of its claim since it is secured by a purchase money security interest.

## CONCLUSIONS OF LAW

A purchase money security interest is created by a creditor providing financing that enables the debtor to acquire an interest in the goods that become the creditor's collateral.[2] See In re Matthews, 378 B.R. 481, 486-87 (Bankr. D.S.C. 2007) (describing the requirements of

---

[2]     South Carolina law provides:
(a) In this section:
        (1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and
        (2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.
(b) A security interest in goods is a purchase-money security interest:
        (1) to the extent that the goods are purchase-money collateral with respect to that security interest....
S.C. Code Ann. § 36-9-103 (West 2007).

South Carolina law under revised Article 9). Within the context of lien avoidance under 11 U.S.C. § 522(f) and its fresh start policy, controlling precedent in this jurisdiction has found that the refinancing of an antecedent debt does not result in a creditor obtaining or retaining a purchase money security interest. See Dominion Bank of Cumberland v. Nuckolls, 780 F.2d 408, 413 (4th Cir. 1985) (finding, under Virginia law, that "refinancing or consolidating loans by paying off the old loan and extending a new one extinguishes the purchase money character of the original loan because the proceeds of the new loan are not used to acquire rights in the collateral"); Rosen v. Associates Financial Services Co., 18 B.R. 723, 724 (Bankr. D.S.C. 1981) (aff'd 17 B.R. 436 (D.S.C. 1982)) (finding a creditor created a non-purchase money security interest by refinancing a purchase money loan previously made to debtors and extending new credit); In re Mosley, C/A No. 96-71639-W, slip op. (Bankr. D.S.C. May 15, 1996) (finding a creditor did not retain a purchase money security interest when it extended credit to consolidate various purchase money obligations); In re Haus, 18 B.R. 413, 417 (Bankr. D.S.C. 1982) (finding that the original purchase money lender lost its purchase money status by refinancing the purchase money obligation).

   This Court has more recently addressed the concept of purchase money security interests in cases involving amended 11 U.S.C. § 1325(a)(*). In these cases, the Court has distinguished the refinancing of antecedent debt, addressed in Nuckolls, from those instances where the proceeds of a new loan are clearly used to acquire the collateral, in this case a vehicle. This Court has recognized a purchase money security interest when the primary purpose of the loan is to acquire the collateral, despite the inclusion of other non-purchase money collateral or the financing of other items inherently related to the purchase. See Matthews, 378 B.R. at 487-88 (finding a creditor retained a purchase money security interest, notwithstanding a cross-

collateralization clause, where the purchase money obligation was traceable and the contract provided for a release of the purchase money collateral upon payment of the purchase money obligation); In re Vinson, C/A No. 07-04893-B, slip op., 2008 WL 319678 (Bankr. D.S.C. Jan. 25, 2008) (finding that the refinancing of negative equity along with the purchase price of a new vehicle does not transform the creditor's security interest into a non-purchase money security interest); In re Macon, 376 B.R. 778 (Bankr. D.S.C. 2007) (finding that the financing of GAP insurance and a service contract is part of the purchase price for the vehicle and does not destroy the purchase money nature of the creditor's security interest). In each of these cases, the creditors loaned the money necessary for the debtors to acquire rights in the vehicles at issue and the purchase money obligations were clearly identifiable in the debtors' respective bankruptcies. While the Fourth Circuit has pending before it similar cases, this Court and others have attempted to reconcile the *per se* rule in Nuckolls with the apparent shift in Congressional policy as represented by 11 U.S.C. § 1325(a)(*). See Wells Fargo Financial North Carolina 1, Inc. v. Price (In re Price), C/A No. 5:07-cv-133-BR (E.D. N.C. Nov. 14, 2007), *appeal docketed*, No. 08-1022 (4th Cir. Jan. 8, 2008) (considering whether the "transformation rule" should be applied when a creditor finances negative equity and GAP insurance as part of the purchase price of a vehicle); In re Lavigne, 2007 WL 3469454 (Bankr. E.D. Va. Nov. 14, 2007) (distinguishing Nuckolls and adopting the "dual-status rule" where a creditor financed a debtor's negative equity in an old vehicle as part of the purchase price of a new vehicle); In re Huddle, 2007 WL 2332390 (Bankr. E.D. Va. Aug. 13, 2007) (following Nuckolls, within the context of applying 11 U.S.C. § 1325(a)(*), where a debtor refinanced a purchase money obligation). In the absence of controlling precedent, this Court has relied on the text of South Carolina's commercial code and case law interpreting similar statutes. See Matthews, 378 B.R. at 486-88.

In this case, the Court must determine whether Atlantic retained a purchase money security interest after it and Debtors entered into the New Note. Considering the precedent in this District related to the refinancing of an antecedent debt, the Court must conclude that Atlantic does not hold a purchase money security interest. See Nuckolls, 780 F.2d at 413.

Although Atlantic urges the Court to consider the New Note as a mere modification of the Old Note based upon its internal accounting of the Old Note, the New Note and Mrs. Connelly's testimony are persuasive evidence that the New Note was not a mere modification. Though many terms of the New Note are essentially the same as the Old Note, the New Note, by its own terms,[3] was intended to extinguish the existing debt and control the parties' relationship. See Superior Automotive Ins. Co. v. Maners, 261 S.C. 257, 199 S.E.2d 719, 722 (S.C. 1973) (discussing novation and finding that the intent of the parties, as expressed in the plain language of their contract, should control); Butler, 160 B.R. 155, 158-159 (Bankr. D. Idaho 1990) (finding a novation where the contract expressly rescinds the previous agreement or deals so comprehensively with the subject matter that the previous agreement cannot stand). The New Note also contains a new security agreement and is therefore not a continuation of the existing security agreement. See McAllister, 267 B.R. 614, 622 (Bankr. N.D. Iowa 2001) (finding that there was not a novation when the execution of new promissory notes were not precipitated by the execution of new security agreements). Though Atlantic's witness testified that the Old Note is somehow still effective and controls the parties' relationship, Atlantic attached the New Note to its proof of claim, without reference to the Old Note, in this bankruptcy case as evidence of the debt and its security interest. Mrs. Connelly's unrebutted testimony indicated that Atlantic

---

[3] Atlantic drafted the New Note it entered into and the terms of the New Note are therefore construed against Atlantic. See United States v. Seckinger, 397 U.S. 203, 210, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970) (applying the "general maxim that a contract should be construed most strongly against the drafter" in choosing to interpret a contract unfavorably to the Government, which had drafted the contract).

expressly offered Debtors the option of either entering into a classic loan modification or refinancing the original loan and that Debtors chose to refinance the loan in order to obtain an additional grace period. Mrs. Connelly's testimony provides persuasive evidence that the New Note is not a mere renewal or modification of the Old Note but a new agreement. See Mid-Eastern Electronics, Inc. v. First Nat. Bank of Southern Maryland, 455 F.2d 141, 145 (4th Cir. 1970) (finding that the intent of the parties should be considered in determining whether the refinancing of debt destroys the original security interest). Finally, the critical distinction between this case and Matthews, Macon, and Vinson is that Atlantic did not extend credit under the New Note that enabled Debtors to acquire rights in the vehicle and therefore, respecting precedent, the Court cannot conclude that Atlantic maintains a purchase money security interest. See S.C. Code Ann. § 36-9-103 (West 2007); Rosen, 17 B.R. at 437.

Based upon the foregoing, Atlantic's Objection pursuant to 11 U.S.C. § 1325(a) is overruled. Since Atlantic also opposes Debtors' proposed valuation of its collateral pursuant to 11 U.S.C. § 506, this portion of the Objection shall be heard at a continued confirmation hearing on July 22, 2008. The parties shall submit a new joint statement of dispute within five (5) days of the issuance of this Order to address the remaining issue in this case.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
June 25, 2008